Frank J. Klesh, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

588

Argued October 9, 1980, before Judges MacPhail, Williams, Jr. and Palladino, sitting as a panel of three.

*David Gates,* with him *Frank J. Klesh,* for petitioner.

*Jason Manne,* Assistant Attorney General, for respondent.

Opinion by Judge MacPhail, December 24, 1980:

Frank Klesh (Petitioner) has appealed from the final administrative action of the Department of Public Welfare (Department) which affirmed the amended order of the Department's Hearing and Appeals Unit denying a request for the replacement of food

stamps not received by Petitioner in February of 1979 and finding Petitioner ineligible for food stamps effective March 1, 1979. We affirm.

Petitioner and his wife were participants in the food stamp program in January of 1979, their eligibility being due, in large part, to high monthly medical expenses which were deductible in computing income under the then applicable law.[1] An authorization to purchase (ATP) food coupons for February, 1979, valued at $106.00, was mailed on January 31 but, according to Petitioner, was never received. Petitioner did not report the lost ATP in February but requested a fair hearing on May 22, 1979 to determine if he was entitled to a replacement ATP. Effective March 1, 1979 state regulations implementing the federal Food Stamp Act of 1977 (Act)[2] were promulgated.[3] Under the new law the deduction for high medical expenses, as well as other itemized deductions, were replaced with a standard deduction. Petitioner was found to be ineligible by his County Assistance Office as a result of this change in the law.[4] Petitioner, in his request for a fair hearing filed with the Department on May 22, 1979, challenged this finding.

The issues presented for our consideration are: (1) whether the Department erred in refusing to issue to the Petitioner a replacement ATP for February, 1979 and (2) whether the elimination of the medical expense deduction in computing income for food

---

[1] See Section 3753.723 of the Public Assistance Manual (PA Manual), 6 Pa. B. 627 (1976).

[2] Pub. L. No. 95-113, 91 Stat. 958 (1977) (current version at 7 U.S.C.A. §2011 et seq. (1980 Supp.)).

[3] 9 Pa. B. 615 (1979).

[4] The Food Stamp Act of 1977 was recently amended to again entitle certain households to a medical expense deduction. 7 U.S.C.A. §2014(e)(3)(A) (1980 Supp.). This amendment became effective on January 1, 1980. We are therefore concerned with the time period from March 1, 1979 through December 31, 1979.

stamp eligibility purposes is unconstitutional because it violated Petitioner's equal protection rights under the Fifth Amendment to the United States Constitution.

# I

The Department's Hearing and Appeals Unit based its decision that Petitioner was not entitled to a replacement ATP for February, 1979 on regulations which were in effect during that month. The regulations provided that each ATP "is valid from the first (1st) to the last day of the calendar month." Public Assistance Manual (PA Manual) §3755.321(a), 6 Pa. B. 642 (1976). The regulations also provided that "Food Coupon Authorizations that are reported by the household as lost, destroyed or not received may be replaced. . . ." PA Manual §3756.52(D), 6 Pa. B. 650 (1976). The Department reasoned that because replacement ATP's must duplicate the original authorization and because ATP's are valid only during the month for which they are issued, the replacement could not occur in a subsequent calendar month. Since Petitioner did not report that the February ATP was lost until May, 1979 the Department concluded that he was not entitled to a replacement. We agree with this reasoning. We also note that an agency's interpretation of its own regulations is entitled to great weight. *Orner v. Department of Public Welfare,* 44 Pa. Commonwealth Ct. 635, 404 A.2d 452 (1979). Accordingly, we affirm the decision of the Department.

The Department's argument that new regulations adopted March 1, 1979,[5] which specifically provide that a replacement ATP may be issued only if the household reports the loss during the period for which the ATP was intended, should be applied retroactively

---

[5] 55 Pa. Code §527.4(f) ; 7 C.F.R. §274.2(g)(3) (1980).

to February, 1979 is without merit. The Pennsylvania presumption against such retroactive application controls. *See* 1 Pa. C. S. §1926. We, therefore, agree with the application to the instant case of Department regulations which were in force during February of 1979, the month during which Petitioner's original ATP was lost.

## II

We now turn to a consideration of whether the elimination of the medical expense deduction in the federal Food Stamp Act of 1977 violated Petitioner's equal protection rights under the United States Constitution.[6] Although state regulations implemented the Act in our Commonwealth it is necessary for us to consider the validity of the federal Act in order to rule on Petitioner's claim.[7]

Petitioner argues that the elimination of the medical expense deduction creates and discriminates against two classes of persons: the chronically ill and the disabled.[8] After considering several potential gov-

[6] State courts have jurisdiction to decide cases involving federal constitutional rights where, as here, neither the Constitution nor a statute withdraws such jurisdiction. *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318 (1977). A final judgment rendered by the highest state court in which a decision could be had may be reviewed by the United States Supreme Court by writ of certiorari where the validity of a federal statute is brought in question and by appeal where a federal statute is ruled invalid. 28 U.S.C.A. §1257.

[7] It is a federal statute which is ultimately challenged by the Petitioner. The Fifth Amendment, therefore, is applicable. The Fifth Amendment contains no equal protection clause but does forbid discrimination which is so extreme as to be violative of due process. *United States Department of Agriculture v. Moreno*, 413 U.S. 528 (1973).

[8] There is evidence in the record that Petitioner is disabled and his wife is chronically ill. We, therefore, conclude that Petitioner has standing to challenge an alleged classification of those groups of persons.

ernment interests which might support such a classi-
fication scheme Petitioner concludes that the classifi-
cation is not rationally related to a legitimate govern-
mental interest and is therefore invalid. Since we find
no classification of chronically ill or disabled persons
in the Act we need not consider government interests
which might or might not support such a classifica-
tion.

The federal Food Stamp Act of 1977 was intended
to address several reform objectives including reduc-
tion of fraud and abuse, minimization of cost increases
and simplification of administration. Prior to 1977,
income calculations for purposes of determining food
stamp eligibility included the allowance of several
itemized deductions. The legislative history of the Act
describes the itemized deduction process as "too time
consuming, too complex for both eligibility worker and
client, and too error-prone." H.R. Rep. No. 464, 95th
Cong., 1st Sess. (1977), reprinted in, [1977] 2 U.S.
Code Cong. & Ad. News 2033. The legislative history
also records concern that higher income households
were best able to take advantage of the allowable
itemized deductions. A standard deduction was con-
sidered to be the solution to these problems. The stan-
dard deduction, then, replaced itemized deductions
such as court ordered support and alimony payments
and tuition and mandatory fees assessed by educa-
tional institutions.

The medical expense deduction which permitted
the deduction of all medical costs which exceeded $10
per month per household[9] was also eliminated. Thus,
any potentially eligible household with medical ex-
penses in excess of $10 per month was affected by this
change in the law. The Act does not single out the

___

[9] See PA Manual §3753.7233, 6 Pa. B. 628 (1976).

Chronically ill or disabled as classes of persons subject to treatment different from other persons with medical expenses. Therefore, under equal protection analysis we are presented with a provision in the law which is neutral on its face. *See Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979) and *Washington v. Davis*, 426 U.S. 229 (1976). A statute neutral on its face may still be invalid, however, if it reflects invidious discrimination. *Feeney, supra.* We have not found any evidence that the chronically ill or disabled were the subject of invidious discrimination in the Act. While implementation of the standard deduction might impact strongly on the chronically ill or disabled it is now settled that where a statute creates a disproportionate impact on a particular group, that impact must be traceable to purposeful discrimination in order to be constitutionally invalid. *Davis, supra.* We have not been presented with and find no evidence of such purposeful discrimination.[10]

Accordingly, we find that the Food Stamp Act of 1977 does not violate Petitioner's equal protection rights under the United States Constitution.

For the reasons stated in the foregoing opinion we affirm the final order of the Department.

## ORDER

AND Now, this 24th day of December, 1980, the final order of the Department of Public Welfare, dated August 22, 1979, in case No. 49426S is hereby affirmed.

---

[10] Our decision is in keeping with a recent opinion of this Court which held that elimination of the itemized deduction for child support payments in the Food Stamp Act of 1977 does not contravene equal protection rights. *See Madison v. Department of Public Welfare*, 54 Pa. Commonwealth Ct. 318, 421 A.2d 495 (1980).