518 A.2d 596

Betty L. Ishler, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 3, 1986, before a special panel. Re-argued October 8, 1986, before President Judge CRUM-LISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Richard G. Fishman,* for petitioner.

*Jason W. Manne,* Assistant Counsel, with him, *John Kane,* Chief Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, November 25, 1986:

Betty L. Ishler (Petitioner) appeals a final administrative action of the Department of Public Welfare (Department), affirming an adjudication and order of the hearing officer which held that Petitioner had received an overissuance of food stamps. The case is now before us on reargument.

Prior to June 21, 1983, federal regulations permitted states participating in the food stamp program to utilize a standard utility allowance (SUA) in calculating deductions for shelter costs,[1] provided, *inter alia,* the household had incurred heating or cooling costs separate and apart from their rent or mortgage. 7 C.F.R. §273.9(d)(6)(i) (1983). On June 21, 1983, federal rules governing SUA were amended to further provide that cooling costs would be limited to the operation of air conditioning systems or room air conditioners.[2] 48 Fed. Reg. 28192 (1983), codified at 7 C.F.R. §273.9(d)(6)(i) (1986) (federal amendment). The federal amendment was subject to state implementation no later than October 19, 1983. 7 C.F.R. §272.1(g)(66) (1986). Owing to what the Department claims was administrative error, the Department's regulation containing SUA requirements, 55 Pa. Code §523.3(d)(5)(iii), was never revised to conform to the new federal requirements. Instead, on April 10, 1985, the Department communicated the federal amendment to its caseworkers by way of an internal Department memorandum, entitled Income Maintenance Bulletin No. 523-85-10 (IMB), which was to take effect on May 1, 1985.

---

[1] Under the food stamp program, eligible low income households must pay a certain amount of money, based on the household's net income, in exchange for food stamp coupons of a greater face value than the amount paid. Applicable deductions work to decrease a household's net income for food stamp purposes and thereby to increase its food stamp benefits. Households not entitled to SUA are still permitted to claim deductions for various utilities the households pay separately. *See* 7 C.F.R. §273.9(d)(6)(i) (1986); 55 Pa. Code §523.3(d)(5)(iii)(B).

[2] The United States Department of Agriculture (USDA) elected not to include cooling costs relating to the operation of fans, reasoning that "such costs are relatively low and households relying on fans for cooling will not be adversely affected since they will be able to use actual utility costs." 48 Fed. Reg. 28191 (1983).

As a result of the Department's error, Petitioner, a food stamp recipient, was permitted to receive a deduction under SUA for cooling costs she incurred in 1984 while operating a twenty-inch electric fan to cool her second floor apartment.

Petitioner received a notice from the Department dated April 15, 1985, which indicated that she had received an overpayment of food stamps. Petitioner requested a hearing which was held on June 3, 1985, by telephone. At the hearing, counsel for Petitioner argued that inasmuch as she had incurred a separate cooling cost, she was eligible for SUA and that the IMB could not be applied retroactively. The hearing officer dismissed Petitioner's argument on the basis that Petitioner failed to qualify for SUA under the federal amendment. The Department affirmed the decision of the hearing officer and the instant appeal followed.[3]

We note as a preliminary matter that the food stamp program is a joint undertaking of the federal and state governments under which the participating states agree to administer the program in conformity with the provisions of the Food Stamp Act of 1977 (Act), 7 U.S.C.A. §§2011-2029 (West Supp. 1986), regulations issued pursuant to the Act and any changes in federal law and regulations. *See* 7 C.F.R. §272.2(b) (1986). In exchange for state compliance, the federal government, through the USDA pays 100 percent of the program's benefits and all the administrative costs at the national level.

Petitioner contends initially that the federal law is inapplicable inasmuch as the SUA is a state option. We

---

[3] Our scope of review of orders of the Department is limited to determining whether the adjudication is in accordance with the law, whether constitutional rights have been violated and whether the findings of fact are supported by substantial evidence. *Brog Pharmacy v. Department of Public Welfare,* 87 Pa. Commonwealth Ct. 181, 487 A.2d 49 (1985).

disagree. Even where a state adopts an optional federal procedure, it must still ensure that its practices conform to federal law. *See Harrington v. Blum,* 483 F. Supp. 1015 (S.D.N.Y. 1979), *aff'd,* 639 F.2d 768 (2d Cir. 1980).

Petitioner next contends that the Department's decision constitutes retroactive application of the law inasmuch as the pertinent Department guidelines were not in effect during the period in question. We cannot agree. In *Van Dusen v. Department of Public Welfare,* 79 Pa. Commonwealth Ct. 60, 468 A.2d 540 (1983), we stated: "States must use the federal eligibility standards in determining eligibility for food stamp grants. 7 U.S.C. §2014(b). Furthermore, state or local policies or practices inconsistent with federal statutes or regulations are invalid." *Id.* at 64, 468 A.2d at 542. We concluded in *Van Dusen* that where a conflict exists between state and federal regulations, federal law is controlling.

Here, the Department's regulation concerning SUA at 55 Pa. Code §523.3(d)(5)(iii) was clearly in conflict with the federal amendment at the time Petitioner was certified for food stamps. To the extent that such a conflict existed, federal law was controlling. There is, therefore, no question of a retroactive change in the law as contended by Petitioner in her reliance upon *Klesh v. Department of Public Welfare,* 55 Pa. Commonwealth Ct. 587, 423 A.2d 1348 (1980).

Petitioner finally contends that she should be relieved from liability because the change in the law was a change in household circumstances which she was not required to report under 55 Pa. Code §541.3(d). We must reject her argument inasmuch as the regulation is simply inapplicable here.

We acknowledge that it seems unfair for the Department to take action to recover overpayment when such

overpayment is the result of the Department's own error. This result, however, is mandated by the federal regulations.[4] The Department argues, moreover, that its failure to establish a claim in this instance could jeopardize Pennsylvania's eligibility for administrative cost reimbursement.[5] Finally, the Department asserts that Petitioner may elect to have the amount due repaid by having her food stamp allotment reduced and that if that method is selected, her allotment may not be reduced by an amount with which she does not agree for payment of an administrative error claim. *See* 7 C.F.R. §273.18(g)(3)(ii) (1986).

---

[4] It is provided in 7 C.F.R. §§273.18(a)(2) and 273.18(b)(2)(ii) (1986) that:

(a) . . . The State agency *shall establish a claim* against any household that has received more food stamp benefits than it is entitled to receive.

. . . .

(2) . . . A claim shall be handled as an administrative error claim if the overissuance was caused by State agency action *or failure to take action.*

. . . .

(b) . . . The State agency *shall take action* to establish a claim against any household that received an overissuance due to an inadvertent household or administrative error if the criteria in this paragraph have been met. *At a minimum,* the State agency *shall take action* on those claims for which 12 months or less have elapsed between the month an overissuance occurred and the month the State agency discovered a specific case involving an overissuance. . . .

. . . .

(2) Instances of administrative error which may result in a claim include, but are not limited to, the following:

. . . .

(ii) A State agency incorrectly computed the household's income or deductions, or otherwise assigned an incorrect allotment. . . . (Emphasis added.)

[5] *See* 7 C.F.R. §276.4 relating to suspension and disallowance of administrative cost.

We conclude that where a participant in the food stamp program has received an overissuance of food stamps under applicable federal regulations due to the Department's administrative error, the Department is entitled to recoupment in view of the mandatory nature of the federal regulations, the possible jeopardy to the entire program in Pennsylvania if the Department fails to act in such circumstances and the likelihood that recoupment will be had, if at all, by a plan which must first be negotiated with the party against whom recoupment is sought.

The Department has stated that it will reduce its claim to twelve months preceding its discovery of the overissuance pursuant to 55 Pa. Code §561.4(3). We, accordingly, will affirm the Department's order with that modification.

## ORDER

The order of the Department of Public Welfare, dated September 9, 1985, is affirmed as modified to provide that Petitioner shall not be responsible for administrative error claims that occurred more than twelve months prior to the date the overissuance was discovered.

---

DISSENTING OPINION BY JUDGE BARRY:

I dissent. The purpose of the Food Stamp Act is to increase healthy, nutritious eating among low-income families. Mrs. Ishler was receiving $349.00 per month from which she paid $200.00 per month for rent and $4.50 per month for garbage pickup and electric. She received $76.00 per month in food stamps after her SUA deductions. We cannot believe that she placed in savings the difference between the amount she received and the amount she would have received had the state

not erred. Then to what amount would DPW have her already minimal food stamp allowance be reduced for the purpose of recouping the overissuance? The majority opinion cites to 7 C.F.R. §273.18 in support of its decision. The definition of Administrative Error Claims under that section is defined as an "overissuance . . . caused by state agency action or failure to take action." I must note that I have difficulty believing that Congress, when it used the phrase "failure to take action", contemplated applying it to a state's unconscionable two-year delay in actually adopting and implementing the amendments to the federal regulations under which it had been operating. Such an interpretation could have vast consequences and provide little incentive for states to conscientiously take action when federal regulatory amendments are made. I am inclined to believe that 7 C.F.R. §276.1(2), which puts the responsibility for preventing losses of federal funds on the states and authorizes the Food and Nutrition Service to bill the state agency for an amount equal to the amount of coupons issued as a result of the state's *negligence* (as opposed to administrative error) is the only proper and fair resolution to this problem. This provision was obviously designed to promote efficient administration of the program at the state level. Under this approach, the state, instead of Mrs. Ishler, would have an amount equal to the overissuance "recouped" by the federal government. There is, I believe, no threat that the Commonwealth will lose its entitlement to federal subsidies as a result of this case. *Van Dusen,* cited in the majority opinion, must be distinguished from the case before us because in *Van Dusen* DPW adopted and implemented a federal regulation which it then erroneously misinterpreted. Here, the state admittedly never adopted nor implemented the amendments to the regulations. Respondent argues that *Klesh v. Department of Public*

*Welfare,* 55 Pa. Commonwealth Ct. 587, 423 A.2d 1348 (1980), where we held that a newly enacted state regulation could not be applied retroactively, "is not authority for the proposition that tardy implementation of a federally mandated food stamp program requirement cannot be corrected" because it dealt only with a state regulation. I must disagree since in *Klesh* we were dealing with a state regulation, 55 Pa. Code §527.4(f), which adopted federal provisions. *See* 7 C.F.R. §274.2(g)(3) (1980). *Klesh* held that Pennsylvania's presumption against retroactivity under 1 Pa. C. S. §1926 was applicable. I believe *Klesh* could be applied here.

Neither *Harrington,* cited in the majority opinion, nor any of the federal cases cited therein, stand for the proposition that affected citizens are governed by amendments to federal regulations which the state "forgot" to adopt.

I must add, as well, that I believe the provision relating to consent of households to repayment terms, 7 C.F.R. §273.18(g)(3)(ii), is not the answer. These recipients should not be subjected to the same dunning letters as those who default on loans or other obligations, *i.e.,* a barrage reminding them of their "obligation" and stating or, at least, implying, that action will be taken if some agreement to repayment is not reached. Furthermore, if, as DPW contends in its brief, attempts at recoupment often result in nothing but these letters, perhaps it should reconsider its present practice under such invidious regulations which tend to have their primary effect on those who, out of honesty, pride or sheer fear of governmental reprisal, voluntarily reduce their allotment below already minimal levels.

The state should be (as we have suggested in the past when those affected by government action are misled) estopped from recouping any sum from Mrs. Ishler or from unjustly disturbing or threatening to dis-

turb her presently very meager allowance. For cases where estoppel against public bodies has been invoked, *see Snipas v. Unemployment Compensation Board of Review,* 43 Pa. Commonwealth Ct. 129, 401 A.2d 888 (1979); *Swope v. Unemployment Compensation Board of Review,* 199 Pa. Superior Ct. 34, 184 A.2d 415 (1962); *O'Toole v. West Mifflin Borough,* 218 Pa. Superior Ct. 146, 275 A.2d 652 (1960); *Ervin v. Pittsburgh,* 339 Pa. 241, 14 A.2d 297 (1940); *Moser v. United States,* 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951).

Judge CRAIG joins in this dissent.