# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith Kohler, :
:
Petitioner :
:
v. : No. 1656 C.D. 2015
:
Department of Human Services, : Submitted: January 8, 2016
:
Respondent :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER** **FILED: May 5, 2016**

Keith Kohler (Petitioner), representing himself, petitions for review of the Final Administrative Action Order (Order) of the Department of Human Services (DHS), issued by the Bureau of Hearings and Appeals (BHA), that affirmed the Adjudication of an Administrative Law Judge (ALJ) denying Petitioner's appeal from the calculation of his allotment of Supplemental Nutrition Assistance Program (SNAP) benefits.[1] On appeal, Petitioner argues that the County Assistance Office (CAO) miscalculated his allotment of SNAP benefits because it did not apply both the Heating Standard Utility Allowance (Heating Allowance) and the Non-Heating Standard Utility Allowance (Non-Heating Allowance) when

---

[1] SNAP benefits were formerly known as "Food Stamps."

it calculated his benefits, and it was required to do so under federal and state law. Because we conclude that the Order is not erroneous, we affirm.

Petitioner, a recipient of SNAP benefits, received a notice from DHS on June 4, 2015 indicating that his monthly benefits were increasing from $16.00 to $24.00 (Notice) and explaining how Petitioner's eligibility and allotment of benefits were calculated. (Notice at 1, 3, Ex. C-2 at 1, 3.) The Notice advised Petitioner that if he disagreed with the calculation, he had the right to an administrative fair hearing before DHS. (Notice at 5.) Petitioner disagreed with the amount of benefits and requested a fair hearing.[2] (Fair Hearing Form, Ex. C-5.) In his appeal, Petitioner argued that because he pays for his heat *and* other utilities, he was entitled to both the Heating and Non-Heating Allowances. (Fair Hearing Form.)

At a hearing before the ALJ, the CAO presented documentary evidence and the testimony of its Income Maintenance Caseworker Supervisor (Caseworker). Petitioner appeared pro se, testified on his own behalf, and offered additional documentary evidence. The ALJ credited Caseworker's testimony. (Adjudication, Findings of Fact (FOF) ¶ 13.) Based on the evidence presented, the ALJ found, in relevant part, that Petitioner is responsible for paying his heating costs and his "primary heating source is electric."[3] (FOF ¶¶ 5-6.) The ALJ set forth the calculation made by the CAO to determine Petitioner's SNAP eligibility, which utilized only the Heating Allowance of $557, resulting in Petitioner having a "Net

---

[2] Prior to appealing, Petitioner contacted the CAO for an additional explanation regarding the calculation, which he received by letter dated June 8, 2015. (Letter from CAO to Petitioner (June 8, 2015), Ex. C-4.)

[3] The ALJ made other findings of fact and calculations related to Petitioner's other expenses, such as homeowner's insurance and medical expenses, but those findings are not relevant to the present matter because Petitioner does not challenge those determinations.

FS [(Food Stamp)] Monthly Income" of $566 and making him eligible for $24 in SNAP benefits per month. (FOF ¶¶ 9-11.)

Citing the federal regulations at issue, 7 C.F.R. § 273.9(d)(6)(iii), which relate to the standard income deductions for determining eligibility for SNAP benefits, the ALJ did not accept Petitioner's position that he was entitled to more than one utility allowance under the applicable regulations. (Adjudication at 6.) The ALJ concluded that, pursuant to the federal regulation, "the H[eating Allowance] is a standard utility allowance [(SUA)] for **all utilities** that includes heating and cooling costs and the N[on-Heating Allowance], includes electricity and fuel for purposes other [th]an heating or cooling, water sewerage, well and septic tank installation and maintenance, telephone, and garbage or trash collection." (Adjudication at 6 (emphasis in original).) The ALJ held that, because Petitioner pays for his own heating, the Heating Allowance, which includes *all utilities* such as "his well maintenance and trash removal," was the applicable utility allowance. (Adjudication at 6.) Therefore, the ALJ concluded that the CAO properly calculated Petitioner's eligibility and denied Petitioner's appeal. (Adjudication at 6-7.) The BHA affirmed the ALJ's decision by the Order on August 10, 2015, and denied Petitioner's application for reconsideration on August 28, 2015. Petitioner timely filed a petition for review with this Court challenging the denial of his appeal.[4]

---

[4] "Our scope of review of orders of [DHS] is limited to determining whether the adjudication is in accordance with the law, whether constitutional rights have been violated and whether the findings of fact are supported by substantial evidence." Ishler v. Department of Public Welfare, 518 A.2d 596, 597 n.3 (Pa. Cmwlth. 1986).

3

Before this Court is the issue of whether DHS is required to apply multiple utility allowances where a SNAP recipient pays for his or her own heating/cooling as well as for other utilities, such as water, sewer, and trash removal. Kohler argues that, under 7 C.F.R. § 273.9(d)(6)(iii), he should receive both the Heating Allowance and Non-Heating Allowance because he pays for utilities in both categories. He maintains that, contrary to DHS's position, the Heating Allowance does not include *all* utilities, only those related to heating and cooling, such as electric, natural gas, oil, etc. In response, DHS asserts that: the Heating Allowance covers *all* utilities for the households that pay for their own heating and cooling; and the Non-Heating Allowance is for those households that have two or more utility payments but do not have to pay for heating and cooling.[5]

With respect to the calculation of SNAP benefits, it has been previously noted:

> [SNAP benefits] are available to households meeting specific income requirements. [Sections 14 and 15 of the Food Stamp Act of 1977 (Food Stamp Act),] 7 U.S.C.[] §§ 2014, 2015 . . . . Household income for food stamp purposes is calculated by subtracting certain household expenditures from total household receipts. Income includes "income from whatever source." 7 U.S.C.[] § 2014(d) . . . . Nonetheless, certain monies guaranteed to be used for non-food expenses may be excluded or deducted from total household receipts. Id. For instance, households may . . . "deduct", *inter alia*, medical and dependent care expenses, as well as so-called "excess shelter expenses." 7 U.S.C.[] § 2014(e) . . . .

---

[5] Petitioner filed an "Application for Clarification" regarding the statement DHS made in its brief that "'Each standard utility allowance covers all utility costs for the household.'" (Application for Clarification at 1 (quoting DHS's Br. at 8).) It appears that Petitioner asserts that DHS, in its brief, misrepresents what 7 C.F.R. § 273.9(d)(6)(iii) states. As this Court will review the regulatory language itself, we deny the "Application for Clarification."

4

West v. Sullivan, 973 F.2d 179, 181 (3d Cir. 1992).

Section 14(e)(6)(C) of the Food Stamp Act states, in relevant part, that

**(i) In general**
[A] State agency may use a [SUA] in accordance with regulations promulgated by the Secretary [of Agriculture], subject to clause (iv) [(related to the recipients of energy assistance being eligible for a SUA)], except that a State agency may use an allowance that does not fluctuate within a year to reflect seasonal variations.
. . . .
**(iii) Mandatory allowance**
**(I) In general**
A State agency may make the use of a standard utility allowance mandatory for all households with qualifying utility costs if--

> (aa) the State agency has developed 1 or more standards that include the cost of heating and cooling and 1 or more standards that do not include the cost of heating and cooling; and

> (bb) the Secretary finds (without regard to subclause (III)) that the standards will not result in an increased cost to the Secretary.

7 U.S.C. § 2014(e)(6)(C). The United States Department of Agriculture (USDA) promulgated the regulation at 7 C.F.R. § 273.9(d)(6)(iii)(A), which provides:

(A) With FNS[6] approval, a State agency may develop the following [SUAs] (standards) to be used in place of actual costs in determining a household's excess shelter deduction: an individual standard for each type of utility expense; a standard utility allowance for all utilities that includes heating or cooling costs (HCSUA); and, a limited utility allowance (LUA) that includes electricity and fuel for purposes other than heating or cooling, water, sewerage, well and septic tank installation and maintenance, telephone, and garbage or trash collection. The LUA must include expenses for at least two utilities. However, at its option, the State agency may include the excess heating and

---

[6] FNS is "the Food and Nutrition Service of the [USDA]." 7 C.F.R. § 271.2.

cooling costs of public housing residents in the LUA if it wishes to offer the lower standard to such households. The State agency may use different types of standards but cannot allow households the use of two standards that include the same expense. In States in which the cooling expense is minimal, the State agency may include the cooling expense in the electricity component. The State agency may vary the allowance by factors such as household size, geographical area, or season. Only utility costs identified in paragraph (d)(6)(ii)(C) of this section must be used in developing standards.

The federal regulation also permits states to require the use of a SUA for all households with qualifying utility costs instead of using the households' actual utility costs. 7 C.F.R. § 273.9(d)(6)(iii)(E). This option is available to states if they have "developed one or more standards that include the costs of heating and cooling and one or more standards that do not include the costs of heating and cooling, the standards will not result in increased program costs, and FNS approves the standard." Id. DHS has adopted a regulation addressing the SUAs available in Pennsylvania that provides:

> *Heating standard utility allowance (SUA) and non[-]heating SUA -- 7 CFR [§] 273.9(d)(6).* A CAO will offer an eligible household the opportunity to use the heating SUA, non[-]heating SUA or the household's actual utility costs except for actual telephone costs when computing the combined shelter and utility cost. The SUAs include a non[-]heating SUA and a heating SUA. The heating SUA is available to households which incur out-of-pocket heating or cooling, or both, costs, even if paid irregularly, separate and apart from their rent or mortgage payments. A household that receives energy assistance payments made under the Low Income Home Energy Assistance Program (LIHEAP) is entitled to the heating SUA even if it does not incur out-of-pocket costs. The non[-]heating SUA is available to households which incur utility costs exclusive of heating or cooling costs, or both.

55 Pa. Code § 501.7(a)(1).

Additionally, Petitioner offered as evidence the USDA's explanation of SUAs and a state-by-state list of the available allowances, respectively. "SUAs[] are standardized utility expense figures used in place of actual utility costs to calculate a household's total shelter costs." (SUA Fact Sheet, Ex. A-5.) The USDA explains that the term "HCSUA is a *multi-utility* allowance that *always* includes heating and cooling" and "LUA is a *multi-utility* allowance that *never* includes heating or cooling." (SUA Fact Sheet (emphasis added).) The USDA's multi-state table identifies Pennsylvania's "HCSUA" as being $557 and "LUA" as being $289. (Multi-State SUA Table at 2, Ex. A-6.) These amounts correlate to the Heating Allowance that Petitioner received in the amount of $557 and the Non-Heating Allowance, $289, which he argues he also should have received.

We begin by noting that DHS's "interpretation of its own regulations is entitled to judicial deference unless it is plainly erroneous, inconsistent with regulations or contrary to the enabling statute." Brookline Manor v. Department of Public Welfare, 823 A.2d 1069, 1072 n.10 (Pa. Cmwlth. 2003). DHS is responsible for implementing not only its own regulations, but also those of the USDA, to ascertain an individual's eligibility for SNAP benefits. Upon review, we conclude that DHS's interpretation that the Heating Allowance is a "multi-utility allowance" that covers not only heating and cooling, but also the other utilities a SNAP recipient may pay is consistent with the language of the Food Stamp Act, the federal and state regulations, and the USDA documents offered by Petitioner.

The Food Stamp Act permits states to use a mandatory SUA if the state creates "1 or more standards that *include the cost of heating and cooling* and 1 or more standards that do not include the cost of heating and cooling." 7 U.S.C. § 2014(e)(6)(iii)(aa) (emphasis added). Additionally, the federal regulation states

7

that the HCSUA, the equivalent to the Heating Allowance, is the "standard utility allowance *for all utilities* that includes heating or cooling costs." 7 C.F.R. § 273.9(d)(6)(iii)(A) (emphasis added). The USDA describes this allowance as a "*multi-utility allowance* that always includes heating and cooling," (SUA Fact Sheet (emphasis added)), and the multi-state table created by the USDA identifies Pennsylvania's HSCUA as the one applied to Petitioner, (Multi-State SUA Table at 2). Moreover, DHS's regulation states that the Heating Allowance is for those "households which incur out-of-pocket heating or cooling, or both, costs" that are "separate and apart from their rent or mortgage payments[,]" and the Non-Heating Allowance is for households that "incur utility costs *exclusive of heating or cooling costs, or both*." 55 Pa. Code § 501.7(a)(1) (emphasis added). Here, DHS adopted one standard, the Heating Allowance, as a multi-utility allowance that includes the cost of heating and cooling with the other utilities a SNAP recipient pays, and one standard, the Non-Heating Allowance, as a multi-utility allowance that includes the cost of utilities that a SNAP recipient pays but *not* heating or cooling costs. Although Petitioner asserts that he also is entitled to the Non-Heating Allowance, i.e., the LUA, under 7 C.F.R. § 273.9(d)(6)(iii), because he pays for utilities that are listed therein, we conclude that this list is meant to provide examples of the *types* of utilities, other than heating and cooling, that can be used to count towards the two utilities needed to be eligible for LUA/Non-Heating Allowance, not that these utilities are recoverable in addition to the Heating Allowance. To accept Petitioner's argument that he is entitled to both would be inconsistent with the federal regulation, which states that one cannot receive multiple utility allowances for the same utilities. See 7 C.F.R. § 273.9(d)(6)(iii)(A) (providing that "[t]he State agency may use different types of standards but cannot allow households the

8

use of two standards that include the same expense."). This result, which Petitioner suggested would increase his monthly SNAP benefits from $24 to $111 (Letter from Kohler to BHA (July 8, 2015), Supp. C.R.), could increase the cost of the program, which also would be inconsistent with the Food Stamp Act and the federal regulation, both of which authorize the use of a SUA as long as it does not increase program costs. 7 U.S.C. § 2014(e)(6)(iii)(bb); 7 C.F.R. § 273.9(d)(6)(iii)(E).

Although we are sympathetic to Petitioner's request for additional assistance, the Order is in accordance with the law. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER, Judge**

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Keith Kohler,               :

                           :

             Petitioner     :

                           :

         v.              :    No. 1656 C.D. 2015

                           :

Department of Human Services,   :

                           :

           Respondent   :

**O R D E R**

NOW, May 5, 2016, the "Application for Clarification" filed by Keith Kohler is **DENIED**, and the Final Administrative Action Order of the Department of Human Services, in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**