# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Patrick Walsh, III,         :
            Petitioner     :
                        :
        v.                   :   No. 2018 C.D. 2015
                        :   No. 2558 C.D. 2015
Department of Human Services,   :   Submitted: April 8, 2016
            Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED: July 1, 2016**

In these consolidated cases, petitioner John P. Walsh, III (Walsh), *pro se*, petitions for review of the September 1, 2015 final administrative order (final order) of the Bureau of Hearings and Appeals, Department of Human Services (Bureau).[1] The Bureau's September 1, 2015 final administrative order affirmed an order of an Administrative Law Judge (ALJ), dismissing Walsh's appeal of a June 16, 2014 Lackawanna County Assistance Office (CAO) notice of overpayment of SNAP[2] benefits as untimely. We affirm the Bureau's order.

---

[1] Walsh also filed a motion for reconsideration of the final order with the Bureau. On October 23, 2015, after Walsh filed the petition for review of the final order with this Court, he filed a second and/or amended petition for review, apparently for the purpose of including that aspect of the proceedings below with the initial petition for review. The second and/or amended petition for review, which this Court consolidated with the initial petition for review, does not specifically seek review of the order denying reconsideration, but rather petitions for review only of the final order. Accordingly, we will simply review the merits of the petition for review of the final order rather than reviewing both the final order and the order denying reconsideration.

[2] SNAP was formerly known as the food stamp program.

Walsh had been receiving SNAP benefits when the CAO received information regarding an electronic benefits transfer (EBT), indicating that Walsh completed three EBT transfers outside of the Commonwealth in November 2013. That information apparently prompted the CAO to make inquiries regarding Walsh's residency for the purpose of SNAP eligibility. (Reproduced Record (R.R.) at 313.) By letter with a mailing date of December 4, 2013, the CAO informed Walsh that he was no longer eligible for SNAP benefits beginning on December 1, 2013, because of where he lived. (R.R. at 412). The letter advised Walsh of his right to request a hearing. Walsh requested a hearing, asserting that his address is in Scott Township, Pennsylvania, and that he leaves that address temporarily "for work." (R.R. at 410).

On February 4, 2014, an ALJ conducted a hearing on Walsh's challenge to the termination of his SNAP benefits and issued an order and adjudication denying Walsh's appeal. On March 10, 2014, the Bureau's Chief ALJ issued a final administrative action order (final order), affirming the ALJ's decision. (R.R. at 310.) Walsh filed a petition for review of the final order with this Court. By order dated January 14, 2015, we affirmed the final order, concluding that the ALJ did not err in determining that Walsh did not reside in Pennsylvania, and, consequently, he was not eligible for SNAP benefits.[3]

On or about June 16, 2014, after the date of the final order and after Walsh filed a petition for review with this Court but before we issued our order affirming the Bureau's final order, the CAO sent an overpayment notice to Walsh,

---

[3]*Walsh v. Dep't of Pub. Welfare*, (Pa. Cmwlth., No. 688 C.D. 2014, filed January 14, 2015) (*Walsh I*).

2

covering the period between July 2013 and November 2013. The notice identified February 28, 2014, as the date the CAO discovered the overpayment and June 9, 2014, as the date the CAO verified the overpayment. (R.R. at 258.) The amount of overpayment was $795.00, and the reason for the overpayment identified in the notice was Walsh's lack of residency. *Id*.

Walsh appealed the overpayment notice. On July 2, 2015, ALJ Nause conducted a hearing on Walsh's appeal of the overpayment matter. That hearing appeared to constitute a final hearing for the purpose of the overpayment appeal. By notice dated August 4, 2015, however, the Bureau informed Walsh that a "hearing which was originally scheduled for you has been cancelled and rescheduled because of a timeliness issue." (R.R. at 32.) On August 28, 2015, ALJ Snyder conducted a hearing related solely to the issue of whether Walsh's appeal of the overpayment notice was timely. (R.R. at 25.) During the course of the hearing, ALJ Snyder questioned a representative of the CAO, Dwight Fry, regarding the date the CAO sent the notice to Walsh and the date the appeal was received. Mr. Fry testified that the notice was dated June 16, 2014, and that the appeal was received on October 6, 2014. (R.R. at 26.) Mr. Fry testified that the overpayment notice was sent to 29 Rustic Lane in Scott Township. (*Id*.) That address is the residence of Walsh's parents and the one that Walsh used when he applied for SNAP benefits.

ALJ Snyder asked Walsh's father, who was acting as a representative for Walsh, why he did not file an appeal within the appeal time period. (R.R. at 26-7.) Walsh's father testified that he received the notice and that he "definitely responded in time. I thought I had plenty of time to do it." (R.R. at 27-8.) Walsh's father testified:

3

> It seemed like the appeal with the Commonwealth Court—. And this came up. And it actually gave me—it seemed like it gave me an awful lot of time, because I know I had plenty of time to do it. I was trying to catch up on other things, the Commonwealth appeal, and then all of a sudden I realized oh, my gosh—.

(R.R. at 28.) It appears from the transcript that Walsh's father was unclear regarding the timeliness issue that ALJ Snyder was addressing. In Walsh's *pro se* brief, he claims that he contacted the Bureau's office for clarification of the timeliness question, but he did not receive a clear answer. (Petitioner's Brief at 17, 19.) ALJ Snyder indicated that she had all the testimony she needed and that she was going to look at the regulations and render a decision. (R.R. at 29.)

On September 1, 2015, ALJ Snyder issued an adjudication addressing the question of whether Walsh's appeal of the overpayment was timely filed. The ALJ determined that Walsh had ninety days after the June 16, 2014 issuance of the overpayment notice to file an appeal. The ALJ calculated that period to end on September 14, 2014, and noted that Walsh did not file the appeal until October 7, 2014. Based upon those dates, the ALJ concluded that she lacked jurisdiction to address the merits of the appeal. The ALJ also reasoned that Walsh had not demonstrated reasons for delay in filing the appeal, including non-negligent circumstances or fraud, which would permit the ALJ to consider the merits of a late appeal *nunc pro tunc*. The ALJ opined that Walsh's father's explanation that he was not aware of the appeal deadline did not excuse the untimely filing, and she dismissed the appeal on timeliness grounds. On September 1, 2015, the Bureau's Chief ALJ affirmed the ALJ's order and adjudication. As noted above, Walsh also filed a motion for reconsideration, which the Bureau denied.

4

On appeal,[4] Walsh raises four issues for our review, which we rephrase as follows: (1) whether the Bureau erred in concluding that Walsh's appeal was untimely or in concluding that Walsh is not entitled to *nunc pro tunc* review of the overpayment notice; (2) whether, based upon this Court's order in *Walsh I*, where we concluded that Walsh's residence is not in Pennsylvania for SNAP purposes, the notice the CAO sent to Walsh at the address in Pennsylvania he used to apply for benefits was erroneous and/or invalid; (3) whether the mailing of the overpayment notice before this Court resolved the eligibility issue in *Walsh I* violated Walsh's due process rights; and (4) whether the CAO erred in its calculation of the amount of overpayment.

With regard to the timeliness issue, the Bureau regulation that controls the period for appealing an overpayment notice provides:

> (b) Time limitations on right to appeal. An applicant or recipient must exercise his right of appeal within the following time limits. Appeals which do not meet the following time limitations will be dismissed without a hearing:
>
> . . . .
>
> > (4) For food stamps . . . [a] household may request a hearing within 90 days from the date of the action by the [CAO].

55 Pa. Code § 275.3(b)(4).[5]

---

[4] Our review is limited to considering whether necessary factual findings are supported by substantial evidence and whether any error of law or violation of constitutional rights occurred. 2 Pa. C.S. § 704.

[5] We note that federal law mandates that agencies issuing SNAP benefits have a duty to recoup overpayments regardless of whether a recipient has acted innocently or fraudulently, and regardless of whether the issuing agency acted erroneously in awarding benefits. *Ishler v. Dep't of Pub. Welfare*, 518 A.2d 596, 597 n.3 (Pa. Cmwlth. 1986).

In this matter, there is no doubt that Walsh did not file the appeal within the ninety-day appeal period, and, therefore, the appeal was untimely. Thus, we must consider whether ALJ Snyder erroneously determined that Walsh did not establish grounds to support review of his appeal *nunc pro tunc*.

A party's failure to file an appeal of an administrative agency's action in a timely manner creates a jurisdictional barrier to further review of such action. *C.S. v. Dep't of Pub. Welfare*, 879 A.2d 1274, 1279 (Pa. Cmwlth. 2005). In seeking *nunc pro tunc* relief for the filing of an untimely appeal, a party must establish that the "delay was caused by extraordinary circumstances involving fraud, a breakdown in the administrative process, or non-negligent circumstances related to the petitioner, his counsel or a third party." *Id*.

Walsh, relying upon our Supreme Court's decision in *Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979), asserts that he has established grounds upon which ALJ Snyder should have considered his appeal *nunc pro tunc*. In *Bass*, counsel for the appellant had prepared appeal papers that were ready to be filed. The attorney's secretary, however, became sick the afternoon the papers were supposed to be filed. The secretary testified in a deposition that she was too ill to think about the office and that, upon her return a week later, she became aware that the appeal had not been filed and took steps to correct the matter, which resulted in the filing of a petition to appeal *nunc pro tunc*. *Id*. at 1134. The Supreme Court regarded the fault in that case as a *non-negligent* failure arising from the inaction of a party rather than a court. Walsh argues here that he similarly should not lose his day in court because of the failure of his father to file a timely appeal.

6

In his brief, Walsh contends that his father usually took care of matters in a timely fashion, but his father has health issues, including sleep apnea, that he alleges played a factor in the untimely filing. In support of this claim Walsh has included various documents, such as a letter from one of his father's treating physicians. (R.R. at 7.) These documents, however, are not part of the certified record. Thus, we may not consider them in addressing Walsh's request for *nunc pro tunc* review. *Commonwealth v. Geatti*, 35 A.3d 798, 800 (Pa. Cmwlth. 2011), *appeal denied*, 40 A.3d 1237 (Pa. 2012).

Moreover, unlike the facts in *Bass*, the alleged condition of Walsh's father, even if it were part of the record, does not appear to support his claim that non-negligent reasons support review of the untimely appeal, because Walsh's father testified that the reason he did not appeal in time was because of his belief that the pending appeal of the eligibility issue tolled the running of the appeal period for the overpayment matter. Walsh has cited no legal authority in the pertinent statute or regulations that provides for an automatic stay of an overpayment notice pending an appeal of an eligibility adjudication. Although Walsh may be correct in noting that the written overpayment notice included information indicating that the filing of a timely appeal of the overpayment notice would stay proceedings on the collection of an overpayment,[6] Walsh's appeal of the overpayment notice was not timely.[7]

---

[6] The notice of Walsh's "right to appeal and to request a fair hearing" on the overpayment notice provides "[i]f you appeal within 90 days of the date of this notice, the [Office of Inspector General] will stop all collection activity on this overpayment pending the result of your hearing." (Certified Record, Item no. 2.)

[7] Walsh also points to an order of this Court in *Walsh I*, directing him to file a brief or be precluded from doing so. The procedural history of *Walsh I* and the procedures adopted in this **(Footnote continued on next page…)**

Walsh also claims that he was confused over the meaning of the word "timeliness" in the hearing notice. In his brief, Walsh contends that he called ALJ Snyder's office to inquire as to the meaning and purpose of the hearing and that her office "refused to divulge" what the timeliness hearing concerned. (Petitioner's Brief at 18-9.) Bureau regulations, however, prohibit parties from making contact with an ALJ to whom an appeal has been assigned. 55 Pa. Code § 275.4(3)(F)(II) ("After the written notice [to the recipient of the fair hearing] . . . no further communication with the hearing officer prior to the hearing by the [recipient] . . . will be permitted . . . ."). Consequently, this factor does not support Walsh's request for *nunc pro tunc* relief.

Walsh also raises the question of whether the overpayment notice the Bureau sent was improper, contending that, based upon the holding in *Walsh I* (that he is not a Pennsylvania resident for the purpose of SNAP benefits), the Bureau should have mailed the notice to some other, out-of-state, address where Walsh resides. Walsh contends that, once this Court concluded in *Walsh I* that his actual residence was not in Pennsylvania, the original address he used to apply for benefits was not the appropriate address to send notices regarding his benefits. We first note that Walsh's father has acted as his representative throughout the proceedings. Additionally, Walsh used his father's address for the purpose of applying for benefits. In *Clark v. Department of Public Welfare*, 427 A.2d 712 (Pa. Cmwlth. 1981), this Court rejected a claim that notice from the Department

---

**(continued…)**

Court have no bearing on Walsh's failure to file an appeal with the Bureau from the overpayment notice.

was deficient because it was mailed to the residence of a recipient's sister. We concluded that the hearing examiner specifically found that, even if the notice was improperly mailed to an address other than the recipient's, the record indicated that the recipient nevertheless actually received the notice.

Walsh's father testified that he received the notice at his home and that he failed to respond to the notice within the ninety-day appeal period. Given his admission that he continued to act as Walsh's representative in the proceedings, and given the lack of any citation to law that would support Walsh's position that the Bureau, without receiving a change of address notice from Walsh, had a burden to mail notices to an address other than the one Walsh initially supplied in his application, we conclude that the notice was proper. It was reasonable and lawful for the Bureau to send the overpayment notice to Walsh's father's address. It is not clear from his brief whether Walsh raises this mailing issue as a basis to support his request for *nunc pro tunc* review or as a challenge to the procedural process that was provided to him. Regardless of the purpose, we conclude that the mailing to Walsh's father demonstrates neither non-negligent reasons in support of his request to appeal *nunc pro tunc* nor a violation of due process rights. Consequently, we conclude Walsh has failed to demonstrate a right to *nunc pro tunc* review of the overpayment notice.[8]

Walsh also claims that his due process rights were violated, arguing that the Bureau should not have proceeded with the issuance of an overpayment

---

[8] Walsh relies upon several other decisions from other states and a treatise involving unemployment insurance practice in Texas. The citations and discussion Walsh provides are so incomplete such that we do not need to address these arguments.

9

notice until after this Court resolved the eligibility issue in *Walsh I*. Walsh has cited no authority for the proposition that a pending appeal of an underlying eligibility issue should toll a CAO's duty to seek recoupment of an overpayment. As indicated above, if Walsh had timely appealed the overpayment notice, he might have been entitled to a stay of collection proceedings, but he did not do so. Additionally, given the fact that the Bureau did not commence a hearing on the timeliness of the appeal of the overpayment notice until after we issued *Walsh I*, we find no reversible error.

Because we have concluded that ALJ Snyder did not err in dismissing Walsh's appeal as untimely or in denying *nunc pro tunc* review of the appeal, we need not address Walsh's claim that ALJ Snyder erred in calculating the amount of overpayment.

Accordingly, we affirm the final order of the Bureau.[9]

P. KEVIN BROBSON, Judge

---

[9] To the extent that Walsh may have appealed the Bureau's denial of his motion for reconsideration, we note that Walsh has not supplied any discussion regarding that order. Consequently, we conclude that, even if Walsh's second and/or amended petition for review constituted an appeal from that order, we deem any issues pertaining to that order waived for failure to brief it. *Berner v. Montour Twp.*, 120 A.3d 433, 437 (Pa. Cmwlth. 2014).

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

John Patrick Walsh, III,             :
                    Petitioner       :
                                     :
          v.                         :     No. 2018 C.D. 2015
                                     :     No. 2558 C.D. 2015
Department of Human Services,        :
                    Respondent       :

# **O R D E R**

AND NOW, this 1st day of July, 2016, the order of the Bureau of Hearings and Appeals, Department of Human Services is AFFIRMED.

_____
P. KEVIN BROBSON, Judge